IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CATHY A. SAYLES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09-0803-CV-W-HFS |
| | ) |
| CONTINENTAL CASUALTY | ) |
| COMPANY, formerly doing business | ) |
| as CNA Group Benefits, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Cathy A. Sayles' amended complaint seeks past and future benefits under a group long term disability insurance plan (the LTD plan), provided as part of her benefits package during her past employment as an attorney for Ferrellgas Companies, Inc.[1] The LTD plan is governed by the Employee Retirement Income Security Act of 1974 (ERISA), which confers federal court jurisdiction over this lawsuit.

Plaintiff asserts that she first submitted claim documents to Ferrellgas representatives in November 2001 and to the LTD plan (administered by defendant Continental Casualty Company (Continental), formerly doing business as CNA Group Benefits). Defendant Continental has filed a motion for summary judgment, arguing that plaintiff failed to exhaust her administrative remedies under the plan. Continental also contends, alternatively, that plaintiff's suit was untimely and should

---

[1] Plaintiff named Ferrellgas as a defendant in her amended complaint (ECF doc. 3), under the apparent theory that claim materials had been submitted to and received by Ferrellgas representatives, per their direction, and that her employer was the LTD plan sponsor and a fiduciary. See Amd. Compl. ¶¶ 13, 21. Plaintiff later filed a motion to dismiss claims against that defendant without prejudice, a motion that was granted on May 28, 2010. ECF doc. 5.

be dismissed based on a 3-year limitations provision in the plan. For the reasons outlined below, Continental's motion for summary judgment will be granted on the exhaustion issue.

Background

Plaintiff Sayles worked as an attorney for Ferrellgas. A group long term disability plan governed by ERISA was part of the employee benefits package at the time. In early November 2001, plaintiff submitted a claim for LTD benefits to her employers' benefits department. Kelly Smith Affidavit, Ex. A-1. The claim form was signed by plaintiff and Dr. Satpurkha S. Khalsa, D.C. It indicated that June 1, 2001 was plaintiff's last day of work.[2] Dr. Khalsa signed the form on October 16, 2001 as plaintiff's attending physician, who noted that total disability commenced on June 12, 2001. It contained a notation, however, that plaintiff returned to work on August 22, 2001.[3] Also in early November 2001, plaintiff submitted a second claim for LTD benefits, this one signed by Dr. Kevin S. Coffman, D.C. as plaintiff's attending physician on October 3, 2001. Smith Affidavit, Ex. A-2. The last day worked and date of total disability were identical to those on the first claim form.[4]

According to defendant, on November 27, 2001, Continental faxed a document entitled "Functional Assessment Tool" to Dr. Khalsa, but Dr. Khalsa never returned the completed form. Continental also contends that it made "several requests" for Dr. Khalsa's records regarding plaintiff

---

[2]It appears that plaintiff received short term disability benefits early on in her leave from work.

[3]Plaintiff contends that she only worked 2 or 3 days in late August 2001 and left work because of her health.

[4]Plaintiff signed both claim forms on August 30, 2001. In her amended complaint, plaintiff alleges that she last worked on or about September 1, 2001 and could no longer work because of various medical conditions including fibromyalgia (bodily pain), migraine headaches, depression and anxiety. Amd. Compl. ¶¶ 11 and 12.

2

but it never received any such records. Defendant does not, however, cite to any documents that would demonstrate the faxing or the records requests. Records do demonstrate that Continental faxed a "Functional Assessment Tool" to Dr. Timothy Laird, M.D., who completed the form and faxed it back to the insurer, indicating that as far as he knew, plaintiff was able to perform certain job duties but noting that plaintiff had reported frequent migraines during that period. Smith Affidavit, Ex. B.

On January 11, 2002, Continental sent plaintiff a letter indicating that it needed plaintiff's medical records from Dr. Khalsa to evaluate her claim and that it had not received any records from him despite numerous requests. Smith Affidavit, Ex. C. The letter stated: "If we do not receive the requested medical information within 10 days from receipt of this letter we will assume that you no longer wish to file a claim and your file will be closed." Further, if records from Dr. Khalsa came in at a later date, the letter stated the Continental would "be happy to reopen your claim and give it our full consideration." Continental contends that it did not receive the requested medical records from Dr. Khalsa within 10 days of the letter or any time thereafter. Plaintiff claims on information and belief that she never received the January 11, 2002 letter. Doc. 12-1, pages 7 and 23.

On September 6, 2002, attorney Roger Driskill sent a letter to Continental, indicating that he represented plaintiff, requesting copies of the entire claim file and the plan documents, and stating that he would be supplementing the file with medical records from plaintiff. Smith Affidavit, Ex. D. In response, on September 13, 2002, Continental sent a letter to Driskill enclosing the entire claim file.[5] Smith Affidavit, Ex. E. The letter, referencing the January 11, 2002 letter to plaintiff,

---

[5] Plaintiff disputes that the entire claim file was ever produced to her attorney but her attorney has submitted no affidavit regarding his files. Receipt of the letter is not contested.

3

stated: "We advised Ms. Sayles the file will be closed if we did not receive the medical information within 10 days from Dr. Khalsa. We never received the requested medical information from Dr. Khalsa. Therefore, the file was closed." Continental indicates that it received a letter from Driskill in February 2003, indicating that he was still gathering documents to be submitted as part of plaintiff's claim. Continental has no record of receiving any further communication from plaintiff or Driskill from February 2003 to October 1, 2009, the date on which plaintiff filed this lawsuit. Doc. 9-1, p. 5 (Smith Affidavit). Plaintiff contends that her attorney's records reflect that he did send documents to Continental "on more than one occasion" during that time period, but no such documents are identified.[6]

Legal Standards

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 467 (1962). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, and it must give that party the benefit of all reasonable inferences to be drawn from the evidence. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999). A party resisting summary

---

[6]The complaint allegations refer to documents supplied "on or about June 10, 2005" (¶ 14 of the Amended Complaint, Doc. 3), but this is not confirmed by affidavit of counsel.

4

judgment material cannot rely on mere allegations or denials, unsupported by affidavit, as plaintiff concedes. Doc. 12-1, p. 19. See, e.g., Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997).[7]

Analysis

In its opening brief, Continental argues that plaintiff never submitted a claim form related to any claim beginning on September 1, 2001 and has not submitted any documents or medical records supporting an alleged disability beginning on that date. Continental focuses on the fact that the claim forms submitted show June 12, 2001 is the date on which disability commenced according to plaintiff's attending physicians, Dr. Khalsa and Dr. Coffman. While it is true that September 1, 2001 does not appear on the claim forms, plaintiff signed the forms on August 30, 2001, her doctors signed them in October 2001, and she submitted them to Continental in early November 2001. Viewing the facts in the light most favorable to plaintiff, these later dates would be consistent with a September 1, 2001 date of disability.

It is well settled law that before an ERISA plan participant may file suit, he or she must exhaust administrative remedies under the plan. Chorosevic v. MetLife Choices, 600 F.3d 934, 941 (8th Cir. 2010). Continental, again relying on the absence of a September 1, 2001 disability date on the claim forms, argues that plaintiff failed to exhaust her administrative remedies because she

---

[7]Defendant's affidavit and attachments are the only factual submissions by either side in this case. Plaintiff's verified pleading is insufficient to create a dispute, containing merely an "information and belief" form of verification. See, e.g., Patterson v. County of Oneida, 375 F.3d 206, 291 (2d Cir. 2004). The most pertinent denial, in any event, is of plaintiff's receipt of the January 11, 2002 letter stating the "file will be closed" (subject to reopening) if records from Dr. Khalsa were not promptly received. Mailing is not contested by argument or otherwise, so the presumption of receipt would be used, absent rebuttal "by specific facts". Stockton v. Northwest Airlines, Inc., 804 F. Supp. 2d 938, 946 (D. Minn. 2011). This issue is not material, however, as the later receipt by counsel of a copy is not contested by him.

5

did not follow plan-prescribed time limits of (1) giving notice of her claim within 30 days of the date of disability or as soon as reasonably possible and (2) filing a written claim form or written proof of loss within 90 days after the end of the elimination period[8] or as soon as reasonably possible but "no later than 1 year after the time proof is otherwise due." Smith Affidavit, Ex. G, LTD Plan, pg. 15. As explained above, though, the court is not convinced that the claim forms plaintiff submitted are meaningless as to a currently asserted claim of disability commencing on September 1, 2001.

One of plaintiff's responses to the motion for summary judgment is that the court should "defer considering the motion for summary judgment" because defendant has allegedly "not produced any documents under Rule 26, including the Continental claim file". Doc. 12. Defendant responds that the claim file was being supplied to counsel for a second time, repeating what it did in September, 2002. Doc. 14, page 8, note 12. In the absence of an affidavit supporting the contention that counsel did not receive a copy of the file in 2002, and any further mention of the reported tender last year, I assume the issue of prematurity of the motion is no longer being pressed.

Plaintiff argues that Continental is estopped from arguing failure to exhaust administrative remedies because it never advised plaintiff about "any right or procedure for administrative review or federal court review." Indeed, pertinent regulations require that such review and appeal rights be included in a denial of benefits. But in this case, Continental never issued a written denial of benefits. Instead, Continental closed the claim file not long after its January 11, 2002 letter to plaintiff, in which it requested medical records from Dr. Khalsa within 10 days. Plaintiff contends

---

[8]The plan provides that the elimination period for long term disability claims is 180 days from the date of disability. Smith Affidavit, Ex. G, LTD Plan, pg. 3. Continental contends that given plaintiff's alleged disability date of September 1, 2001, the elimination period would have ended on March 1, 2002.

6

that she never received that letter, but the closure of the file was known to her counsel at least in September, 2002.

What we have here is a file which does not permit a thorough or sensible evaluation of plaintiff's health in 2002, and plaintiff does not argue she has presented a record that would justify a favorable ruling on the merits. In effect she seeks judgment as sanctions for her theory of a procedural blunder. The basic procedural defaults in 2002 and 2003 however, as shown by her file, are those of plaintiff, her counsel, and probably one of her doctors. On the record here, the court finds that plaintiff has failed to exhaust her administrative remedies. Through counsel she either abandoned the claim or silently gave up an attempt to process it, quite a few years before filing suit.[9]

Continental also argues that even if plaintiff had submitted a claim for disability beginning on September 1, 2001 and Continental took no action, Continental is still entitled to summary judgment. Continental contends that in 2001, the controlling regulation – 29 C.F.R. § 503.1(h) – provided that if an administrator did not rule upon a claim within 120 days, the claim was "deemed denied," and cites Nichols v. Prudential Ins. Co. of America, 406 F.3d 98 (2d Cir. 2005). Continental argues that once a participant's claim is "deemed denied," her administrative remedies are exhausted and she has an immediate right to file suit. Thus, Continental concludes that plaintiff's claim for long-term disability benefits submitted in early November 2001 was "deemed denied" no later than early March 2002, at which time the statute of limitations began to run. Continental also argues that an express provision in the plan requires that all lawsuits seeking benefits must be filed within 3 years. As a result, Continental contends, plaintiff's suit, filed in

---

[9]A failure to exhaust ruling does not suggest that an effort to reopen the file is still timely. See, e.g., Noblin v. Unum Life Insurance Company of America, 2011 WL 3703068 (W.D. Ark). Any comment on this moot issue would be inappropriate.

7

October 2009, was untimely and should be dismissed.

Because these last arguments were raised for the first time in the reply brief, the court ordered plaintiff to file a sur-reply responding to them and allowed Continental to file a response. Plaintiff's sur-reply does not address either argument, instead citing other ERISA regulations and arguing that Continental was required "to either pay or deny" the claim and that it did neither. She offers no authority requiring a formal denial of a claim that has apparently been abandoned or otherwise remains unexhausted. In any event, notice of "closing" was apparently twice given.

For present purposes, the court will assume that Continental's "deemed denied" argument is sound and that plaintiff's statute of limitations began to run in early March 2002.[10] Closer sua sponte examination of the enforceability of the plan's purported 3-year limitation for filing suit is not warranted under the circumstances.

Conclusion

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment (ECF doc. 8) is GRANTED. Judgment shall be entered in favor of defendant.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

March  15 , 2012

Kansas City, Missouri

---

[10]The court questions whether the "deemed denied" language of 29 C.F.R. § 503.1(h) as of 2001 would have applied to new claims for which an initial benefits determination had not yet been made. Instead, it appears that it may only apply to an appeal of a denial of benefits, which was the situation in Nichols. 406 F.3d at 102.